UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| SLS SHIPBUILDING CO. LTD, | § § | |
| Plaintiff, | § § | |
| v. | § § | MISC. ACTION NO. H-11-271 |
| IONIA MANAGEMENT S.A., et al., | § § | ADMIRALTY |
| Defendants. | § § | |

## MEMORANDUM AND ORDER

On July 1, 2011, the Court granted Defendants' Motion to Vacate Warrant of Arrest Pursuant to Supplemental Admiralty Rule E(4)(f) and ordered that the vessel be released from Plaintiff's custody. (Doc. No. 18.) The Court now wishes to summarize its reasoning.

### I.   BACKGROUND

Plaintiff SLS Shipbuilding Co. Ltd. ("SLS") is a corporation with its principal place of business in the British Virgin Islands. Defendant Ionia Management S.A. ("Ionia") is a corporation with its principal place of business in Greece. SLS alleges that the other defendant corporations are alter egos of Ionia, and that Defendant Affinity Maritime S.A. ("Affinity") is the registered owner of the vessel M/T THEO.

SLS and Ionia entered into three shipbuilding contracts, which SLS alleges Ionia breached. On approximately January 17, 2011, a London Maritime Arbitration Association tribunal issued a First Final Award in favor of SLS and against Ionia, holding

1

Ionia liable for the breach of the three contracts. SLS estimates the damages to be $27,350,000.[1]

SLS submitted a verified complaint and affidavit pursuant to Rule B of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions ("Supplemental Admiralty Rules"), and on June 17, 2011 the Court granted SLS's Motion for Warrant of Arrest of M/T THEO. On July 1, 2011, Defendants moved to vacate the warrant of arrest. That same day, the Court held a telephonic hearing and granted Defendants' motion.

## II. LEGAL STANDARD

When a plaintiff files a "verified complaint praying for attachment" and "an affidavit stating that, to the affiant's knowledge, or on information and belief, the defendant cannot be found within the district," the Court must enter an order authorizing attachment and garnishment. Supplemental Admiralty Rule B(1)(a) and (b). If property is attached and garnished under Rule B, the property owner is "entitled to a prompt hearing at which the plaintiff [is] required to show why the arrest or attachment should not be vacated . . . ." Supplemental Admiralty Rule E(4)(f). "In addition to meeting the filing and service requirements of Supplemental Rules B and E, in order to support the attachment of a defendant's property, the plaintiff must show that: (1) the plaintiff has a valid prima facie admiralty claim against the defendant; (2) the defendant cannot be found within the district; (3) the defendant's property may be found within the district; and (4) there is no statutory or maritime law bar to the attachment." *Naftomar Shipping and Trading Co. v. KMA Intern. S.A.*, 2011 WL 888951, at *2 (S.D. Tex. Mar. 10, 2011)

---

[1] In its Memorandum in Opposition to Motion to Vacate Warrant of Arrest, SLS asserts that the "principal amount of the claim plus interest and costs, excluding costs herein, is $50,544,688.93." (Doc. No. 16, at 2.) However, the precise claim or award amount is unimportant for the purposes of this motion.

2

(citing *Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.*, 460 F.3d 434, 445 (2d Cir. 2006), *abrogated on other grounds by Shipping Corp. of India Ltd. v. Jaldhi Overseas Pte Ltd.*, 585 F.3d 58 (2d Cir. 2009)). The sole disputed issue in this case is whether Plaintiff has a valid prima facie maritime claim against Defendants.

## III. ANALYSIS

To determine whether Plaintiff has a valid prima facie maritime claim, the Court must first determine whether Plaintiff's claim is considered *maritime*. The parties disagree about which law applies to that determination. Defendants argue that, because it is a procedural question necessary to determine the Court's jurisdiction, U.S. federal law applies. Plaintiff contends that, because the underlying arbitration award was rendered in England, English law applies.

This precise choice-of-law issue has been addressed by a number of courts in the Southern District of New York. The prevailing view appears to be that whether a prima facie maritime claim exists is an entirely procedural question, so federal law applies. *See, e.g., Euro Trust Trading S.A. v. Allgrains U.K. Co.*, 2009 WL 2223581, at *2-3 (S.D.N.Y. July 27, 2009); *Harley Mullion & Co. Ltd. v. Caverton Marine Ltd.*, 2008 WL 4905460, at *2-3 (S.D.N.Y. Aug. 7, 2008) ("Rule B is procedural in nature and federal law applies to procedural issues even if foreign law governs the underlying claims."); *T & O Shipping, Ltd. v. Lydia Mar Shipping Co. S.A.*, 415 F.Supp.2d 310, 314 (S.D.N.Y. 2006) ("Rule B is procedural in nature and when a party brings a Rule B attachment in this district, questions about its validity are governed by federal law."), *overruled on other grounds by Aqua Stoli*, 460 F.3d at 446; *Wall St. Traders, Inc. v. Sociedad Espanola de Construccion Naval*, 245 F. Supp. 344, 350 (S.D.N.Y. 1964); *see also*

*Reibor Intern. Ltd. v. Cargo Carriers (KACZ- CO.) Ltd.*, 759 F.2d 262, 265 (2d Cir. 1985) ("Federal law generally governs questions as to the validity of Rule B attachments."); *Otal Investments Ltd. v. M.V. Clary*, 494 F.3d 40, 50 (2d Cir. 2007) ("the law of the forum—federal maritime law—governs procedural law").[2]

In *Euro Trust Trading*, Judge Lynch reasoned:

> Rule B provides a specific procedural remedy, not available in other federal civil cases, in cases that are within the jurisdiction of the federal court because of their maritime nature. The availability of the remedy thus turns on the nature of the federal jurisdiction over the case. Whether a case falls within the scope of the federal Supplemental Rules for Maritime and Admiralty Claims is manifestly a question of United States federal law calling for the interpretation of procedural rules adopted by the United States. See [Supplemental Admiralty] Rule A. It does not matter how the case would be characterized under the law of some other country, even if that country's law provides the rules governing the substance of the claim.

2009 WL 2223581, at *3. "If the law of the place of the transaction is applied, the jurisdiction of a federal admiralty court would be dependent upon the peculiarities of particular foreign law and jurisdiction would vary from nation to nation. Such an interpretation of this court's admiralty jurisdiction would be contrary to the principal purpose behind the creation of federal admiralty jurisdiction—the establishment of a 'general system of maritime law with uniform operation.'" *Wall St. Traders*, 245 F. Supp. at 350 (quoting *Detroit Trust Co. v. The Thomas Barlum*, 293 U.S. 21, 43 (1934)); *see also Tennessee Coal, Iron & R.R. Co. v. George*, 233 U.S. 354, 360 (1914) ("jurisdiction is to be determined by the law of the court's creation").

In addition, those courts have noted that under a requirement that a claim "be valid under the substantive law that will govern the underlying action, parties initiating or

---

[2] Although the Fifth Circuit does not appear to have directly addressed this choice-of-law issue, in a recent case in which the underlying dispute appears to have depended on English law, the court applied federal law to determine whether the claim was considered maritime. *Alphamate Commodity GMBH v. CHS Europe SA*, 627 F.3d 183, 185-88 (5th Cir. 2010).

4

responding to a Rule 4(E) challenge would be routinely required to litigate issues of foreign law and courts would have to probe into the merits of the underlying claim." *Harley Mullion*, 2008 WL 4905460, at *2. "This sort of detailed examination is inappropriate at a Rule [E(4)] hearing as it would undermine the prima facie standard and is at odds with the limited inquiry contemplated by *Aqua Stoli*." *Id.* (citation omitted); *see also Euro Trust Trading*, 2009 WL 2223581, at *3 (same).

A few courts have applied foreign law to determine the *validity* of a maritime claim under Supplemental Admiralty Rule B. *Al Fatah Intern. Nav. Co. Ltd. v. Shivsu Canadian Clear Waters Technology*, 649 F. Supp. 2d 295, 299-301 (S.D.N.Y. 2009); *Kulberg Finances Inc. v. Spark Trading D.M.C.C.*, 628 F. Supp. 2d 510, 515-19 (S.D.N.Y. 2009); *Precious Pearls, Ltd. v. Tiger Intern. Line Pte Ltd.*, 2008 WL 3172998, at *2-3 (S.D.N.Y. July 31, 2008); *Sonito Shipping Co., Ltd. v. Sun United Maritime Ltd.*, 478 F. Supp. 2d 532, 536 (S.D.N.Y. 2007). In *Sonito Shipping*, Judge Haight reasoned that "Neither Rule B nor any other of the Supplemental Rules create 'a valid prima facie admiralty claim.' Rather, the Supplemental Rules fashion procedures by which a valid maritime claim may form the basis for a writ of maritime attachment." *Id.* Accordingly, that court looked to the substantive law that *did* create the admiralty claim—in that case, English law. *Id.*; *see also Al Fatah*, 649 F. Supp. 2d at 300 ("Where the substantive law underlying the claim is foreign, it would make no sense to determine the claim's prima facie validity under U.S. law.").

However, even those courts that have applied the underlying law to determine the prima facie *validity* of a claim have acknowledged that federal law applies to determining the *maritime nature* of the claim. *Sonito Shipping*, 478 F. Supp. 2d at 536 ("It is common

ground that a charter party is a maritime contract, so Sonito is asserting an 'admiralty claim' against Sun United; but is it a *valid* 'prima facie admiralty claim,' as Rule B requires?") (emphasis in original); *Al Fatah*, 649 F. Supp. 2d at 299 n.4 ("There does not appear to be any dispute that U.S. law governs whether the court has admiralty—in other words, subject matter—jurisdiction. The subject matter jurisdiction of federal courts is limited and supplied by federal statutes; it could not possibly be supplied by foreign law."); *Kulberg Finances*, 628 F. Supp. 2d at 515-16 (concluding that U.S. law applies to determine the court's jurisdiction under Rule B).

Plaintiff cites only one case in which a court applied foreign law to determine whether a claim was considered maritime, *D'Amico Dry Ltd. v. Primera Maritime (Hellas) Ltd.*, 2011 WL 1239861 (S.D.N.Y. Mar. 28, 2011). The plaintiff in *D'Amico* sought to enforce a judgment from the English High Court in federal district court based on the "'general principle,' grounded in concerns of comity, empowering admiralty courts to enforce the decrees of foreign admiralty courts." *Id.* at *2. Judge Koetl cited Second Circuit dicta stating that "an admiralty court has jurisdiction of a claim to enforce a foreign judgment that is itself based on a maritime claim," *Id.* at *3 (quoting *Victrix S.S. Co., S.A. v. Salen Dry Cargo A.B.*, 825 F.2d 709, 713 (2d Cir.1987)), and then looked to English law to determine whether the English judgment as "based on a maritime claim." *Id.*

The Court is not persuaded by *D'Amico* that it should apply English law to whether the underlying arbitration in this case is considered maritime. *D'Amico* did not concern Rule B or any other provision of the Supplemental Maritime Rules, and the numerous cases that directly address this issue all hold that U.S. law applies to this

inquiry.[3] In addition, *D'Amico* contains limited explanation for its application of English law. By contrast, cases such as *Euro Trust* and *Harley Mullion* persuasively argue that this inquiry is procedural, and that it would make little sense to make federal courts' admiralty jurisdiction dependent on foreign law.[4]

The Court holds that whether a claim is considered maritime for purposes of Rule B is a question of federal law. In this case, it is undisputed that a shipbuilding contract does *not* give rise to a maritime claim under federal law. *See, e.g., J.A.R., Inc. v. M/V Lady Lucille*, 963 F.2d 96, 98 n.1 (5th Cir. 1992) ("It is well established that a contract to build a ship is not an admiralty contract.") (citing *Kossick v. United Fruit Co.*, 365 U.S. 731, 735 (1961)); *Employers Ins. of Wausau v. Suwannee River Spa Lines, Inc.*, 866 F.2d 752, 759 n.3 (5th Cir. 1989) ("Contracts relating to the construction of vessels are not considered maritime contracts. Consequently, claims for breach of such contracts are not within the admiralty jurisdiction.") (citations omitted). Thus, Plaintiff does not have a valid prima facie maritime claim, and so does not meet the requirements for attachment or garnishment under Supplemental Admiralty Rule B.[5]

## IV. CONCLUSION

For the reasons discussed in this order, the warrant of arrest of the M/T THEO is **VACATED**, and the vessel is ordered removed from Plaintiff's custody.

**IT IS SO ORDERED.**

---

[3] Notably, *D'Amico* does not cite any of those cases.
[4] Plaintiff similarly argues that the English arbitration award should be enforced as a matter of comity. However, that does not get around the fact that, under U.S. law, Plaintiff does not have a maritime claim, and so the Court lacks jurisdiction to attach or garnish the vessel under Rule B.
[5] The Court expresses no opinion as to which law would apply to determine the *validity* of a maritime claim for Rule B purposes, or as to whether the underlying claim would be considered *maritime* under English law.

**SIGNED** this 5th day of July, 2011.

_____
KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE